# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 50050 | **DATE** | 9/10/2012 |
| **CASE TITLE** |  | Shearrow v. Easton Enterprises, LLC, et al. | |

**DOCKET ENTRY TEXT:**

Defendants' motion for summary judgment [26] is granted. U.S. Water Company, LLC and USWC, Inc. are granted summary judgment on Counts I - IV and VI of the complaint. U.S. Water Company, LLC and USWC, Inc. are terminated from this case.

■[ For further details see text below.]

Docketing to mail notices.

    Plaintiff, Del Shearrow, has sued Easton Enterprises, LLC; U.S. Water Company, LLC; USWC, Inc.; and Randall Easton alleging sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2(a)(1), and the Illinois Human Rights Act, 775 ILCS 5/1–101, as well as retaliatory discharge. U.S. Water Company, LLC and USWC, Inc. have moved for summary judgment contending that (1) they are not plaintiff's employer and are therefore entitled to summary judgment on the sexual harassment and retaliation claims, and (2) they are entitled to summary judgment on the retaliatory discharge claim. For the reasons that follow, the motion is granted.

## I. FACTS

    Randall Easton is the President of Easton Enterprises, LLC; U.S. Water Company, LLC; and USWC, Inc. Easton Enterprises, LLC owns Culligan water products dealerships in Fremont, Indiana; DeKalb, Illinois; and Belvidere, Illinois. U.S. Water Company, LLC owns Culligan dealerships in Dixon, Illinois; Galena, Illinois; Decatur, Illinois; Rushville, Illinois; Taylorville, Illinois; Dover, Ohio; Zanesville, Ohio; Stubenville, Ohio; and Wheeling, West Virginia. The only assets of USWC, Inc. are membership units of U.S. Water Company, LLC. The parties agree that plaintiff was employed by Easton Enterprises, LLC as a sales manager at the Belvidere dealership from April 23, 2007 until June 23, 2009. The parties dispute whether plaintiff was also employed by U.S. Water Company, LLC and USWC, Inc. during this period.

    Steve Maginty was plaintiff's supervisor. Plaintiff alleges that Maginty sexually harassed him starting in September 2007 through the last week of his employment. Easton Enterprises, LLC held a raffle in connection with an open house at its Belvidere dealership on September 6, 2008. The grand prize was a $1,500 vacation and an advertisement for the event indicated that the winner need not be present to win. A Mrs. Dychus won the grand prize by a blind draw on September 6, 2008, but she was not present to collect her prize. When plaintiff complained to the manager of the Belvidere dealership that failing to award the prize was illegal, the manager told plaintiff that Maginty said not to award the prize because the winner was not present.

    Plaintiff drafted a severance agreement prior to a June 10, 2009 meeting with Randall Easton. The

severance agreement contemplated that plaintiff's employment would be terminated, Easton Enterprises, LLC would pay him 4 months severance, Easton Enterprises, LLC would not oppose any claim by plaintiff for unemployment compensation, and that plaintiff would receive all his 401k money. In exchange, plaintiff would agree to release and hold Easton Enterprises, LLC; U.S. Water Company, and Steve Maginty harmless from any claims arising from his employment with Eaaston Enterprises, LLC.

On June 23, 2009, Randall Easton wrote plaintiff a letter agreeing with plaintiff that the employment relationship was broken, terminating his employment, and recounting their June 10, 2009 meeting. Easton noted plaintiff's low regard for Maginty, his reports of Maginty's misconduct, and his complaints about a raffle run by the company. Easton explained that he investigated plaintiff's allegations and everyone he spoke with disputed plaintiff's claims that Maginty was inappropriate with employees.[1] Easton informed plaintiff that he was entitled to his 401k money under the terms of the plan, that Easton Enterprises, LLC would not contest this application for unemployment compensation, but that plaintiff was trying to extort money from the company and it refused to pay the four months severance. Thereafter, plaintiff filed a complaint with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights. He received a right to sue letter on January 10, 2011, and filed the instant lawsuit on February 25, 2011.

It is undisputed that Easton Enterprises, LLC has never made a profit since its formation and claimed losses of $713,451, $646,822, and $664,756 for the years 2007, 2008 and 2009, respectively. Between $400,000 and $500,000 of the losses claimed for 2007-2009 were unrelated to depreciation or amortization. It is also undisputed that neither U.S. Water Company, LLC nor USWC, Inc. have made a profit since they were formed in 2004. Also, although USWC, Inc. did not own any Culligan dealerships after 2008, USWC, Inc's website lists various Culligan locations including Belvidere, Illinois. It is further undisputed that money has been moved between the three corporations for various purposes, but the defendant corporations maintain that everything is ultimately reconciled. The parties dispute whether Randall Easton had a $120,314.24 personal line of credit through Easton Enterprises, LLC even though its balance sheet does not reflect it. Easton Enterprises, LLC also routinely paid Randall Easton's country club dues.

## II. ANALYSIS

U.S. Water Company, LLC and USWC, Inc. move for summary judgment on Counts I-IV and VI of plaintiff's complaint. Defendants argue that (1) plaintiff was employed by Easton Enterprises, LLC not U.S. Water Company, LLC or USWC, Inc. and therefore they should be granted summary judgment on Counts I-IV and VI, and (2) plaintiff has failed to show that he has a claim for retaliatory discharge based on a violation of the Illinois Prizes and Gifts Act, 815 ILCS 525/1, and therefore they should be granted summary judgment on Count VI for this additional reason. In response, plaintiff takes issue with both contentions.

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party. Springer v. Durflinger, 518 F.3d 479, 483 (7th Cir. 2008). Summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). For the purposes of a motion for summary judgment, the court must look at the evidence in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### A. Employment Relationship

Title VII prohibits discrimination and retaliation by an employer against an employee. 42 U.S.C. §§ 2000e-2(a), 2000e-3(a); Knight v. United Farm Bureau Mut. Ins. Co., 950 F.2d 377, 380 (7th Cir. 1991) ("[Plaintiff] must prove the existence of an employment relationship in order to maintain a Title VII action against [defendant]."). Likewise, "the employer's status as an 'employer' within the definition of section 2-

101(B)(1)(a) of the [Illinois Human Rights] Act is an essential element of the cause of action." <u>Aero Servs. Int'l, Inc. v. Human Rights Comm'n</u>, 291 Ill. App. 3d 740, 752 (1997). U.S. Water Company, LLC and USWC, Inc. contend that summary judgment should be granted in their favor because plaintiff has failed to raise a genuine issue of material fact that either was his employer. In response, plaintiff maintains that he has shown facts sufficient to hold U.S. Water Company, LLC and USWC, Inc. liable for the actions of Easton Enterprises, LLC by piercing their corporate veils.

A corporate affiliate of an employer corporation may be a proper defendant in a Title VII action where the affiliate forfeits its limited liability. <u>Worth v. Tyer</u>, 276 F.3d 249, 259 (7th Cir. 2001). One such circumstance is when "piercing the corporate veil" of the affiliate is appropriate because corporate formalities have been ignored and the actions of one company can accrue to another. <u>Id.</u> at 259-60; <u>see also</u> <u>Papa v. Katy Indus., Inc.</u>, 166 F.3d 937, 940-41 (7th Cir. 1999). In order to pierce the corporate veil of an affiliate corporation, a Title VII plaintiff must show (1) such unity of interest and ownership between the affiliate and the employer that separate personalities no longer exist, and (2) circumstances are such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice. <u>Worth</u>, 276 F.3d at 260.

Assuming without deciding that plaintiff has established questions of material fact on the unity of interest and ownership prong of the veil-piercing test, the court nevertheless concludes that plaintiff has failed to provide evidence that would satisfy the second prong of the test, that is, a showing that failure to pierce the corporate veil would sanction a fraud or promote injustice. This second prong "requires something less than an affirmative showing of fraud, but something more than the mere prospect of an unsatisfied judgment." <u>Wachovia Sec., LLC v. Banco Panamericano, Inc.</u>, 674 F.3d 743, 756 (7th Cir. 2012) (quotation marks omitted); <u>see also</u> <u>Sea-Land Servs., Inc. v. Pepper Source</u>, 941 F.2d 519, 522-23 (7th Cir. 1991) ("The prospect of an unsatisfied judgment looms in every veil-piercing action; why else would a plaintiff bring such an action? Thus, if an unsatisfied judgment is enough for the 'promote injustice' feature of the test, then every plaintiff will pass on that score, and [the test] collapses into a one-step . . . test. We cannot abide such a result."). Instead, a plaintiff must show that "a party would be unjustly enriched; a parent corporation that caused a sub's liabilities and its inability to pay for them would escape those liabilities; or an intentional scheme to squirrel assets into a liability-free corporation while heaping liabilities upon an asset-free corporation would be successful." <u>Pepper Source</u>, 941 F.2d at 524.

Plaintiff argues that adherence to the corporate form in this case would sanction fraud or promote injustice. Citing <u>Sea-Land Services, Inc. v. Pepper Source</u>, 993 F.2d 1309, 1312 (7th Cir. 1993) (<u>Pepper Source II</u>), plaintiff maintains that attempts to confuse creditors and unjust enrichment have been held to satisfy the second prong of the veil-piercing test and that there is evidence of both in this case. Specifically, plaintiff contends that there is evidence in the record showing that Easton Enterprises, LLC is not properly registered to do business in Illinois and USWC's website indicates that it owns Culligan dealerships that are actually owned by Easton Enterprises, LLC and U.S. Water Company, LLC. In <u>Pepper Source II</u>, the Seventh Circuit did indicate that the use of corporate facades to avoid responsibilities to creditors could satisfy the "wrong" which the second prong of the veil-piercing test requires. <u>Pepper Source II</u>, 993 F.2d at 1312. In this case, however, the court has not been directed to any evidence that any creditor of Easton Enterprises, LLC was ever actually confused as to the company it was dealing with and as a result went unpaid. <u>See</u> <u>Smith v. Fusion Med. Spa, S.C./Synergy Inst.</u>, 836 F. Supp. 2d 773, 777 (N.D. Ill. 2011) (concluding that plaintiff had not shown the second prong of the veil-piercing test where she failed to point to evidence that would show that creditors were misled). Moreover, the possibility of confusing creditors is not the same as evidence of an actual scheme to "hide assets or bamboozle creditors." <u>See</u> <u>Kestrel Coal Pty. Ltd. v. Joy Global, Inc.</u>, 362 F.3d 401, 405 (7th Cir. 2004). Thus, the court concludes that there is insufficient evidence to satisfy the second element of the piercing test by showing attempts to confuse creditors.

As for unjust enrichment, courts have pierced the corporate veil when failure to do so would unfairly enrich one of the parties or allow a corporation to escape responsibility. <u>Hystro Prods., Inc. v. MNP Corp.</u>, 18 F.3d 1384, 1390 (7th Cir. 1994). Plaintiff claims that there is evidence in the record showing that Easton

routinely used Easton Enterprises, LLC's accounts to pay his personal country club dues and had a line of credit in excess of $100,000 without ever having loaned Easton Enterprises, LLC any money. There is also evidence, according to plaintiff, that Easton Enterprises, LLC routinely paid the expenses of U.S. Water Company, LLC and USWC, Inc. Plaintiff maintains that as a result Easton Enterprises, LLC was drained of $2,000,000 of capital in the last three years to the detriment of its creditors.

Assuming that these circumstances are true, there is still insufficient evidence of unjust enrichment. Despite these purported improper business practices, the court has not been directed to any evidence that any creditor of Easton Enterprises, LLC has gone unpaid while another entity was unjustly enriched and enjoyed a surplus of funds. Moreover, plaintiff has not asserted that if Easton Enterprises, LLC is left as the lone corporate defendant in this case he will be prevented from gaining a full recovery due to, for example, undercapitalization or other financial inability, or because defendants purposely structured themselves for this purpose. Because plaintiff has not shown that a genuine issue of fact exists as to the aggregation of Easton Enterprises, LLC, U.S. Water Company, LLC and USWC, Inc. as his employer, the movants are entitled to judgment as a matter of law on Counts I - IV.

### B. Retaliatory Discharge

Because the court has determined that U.S. Water Company, LLC and USWC, Inc. were not plaintiff's employers, these entities could not have discharged plaintiff from his employment. As a result, these two defendants are entitled to summary judgment on plaintiff's claim for retaliatory discharge in Count VI as well. However, because Count VI remains pending as to Easton Enterprises, LLC, and in the interest of judicial expediency, the court will discuss defendants' arguments regarding plaintiff's retaliatory discharge claim.

Under Illinois law, the tort of retaliatory discharge is a limited and narrow exception to the employment at will doctrine for retaliatory firings that violate the public interest. Turner v. Mem'l Med. Ctr., 233 Ill. 2d 494, 500 (2009). A plaintiff must show that "(1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy." Id. "It is widely recognized that the existence of a public policy, as well as the issue whether that policy is undermined by the employee's discharge, presents questions of law for the court to resolve." Id. at 501.

In this case, U.S. Water Company, LLC and USWC, Inc. argue that plaintiff has not established a genuine issue for trial on the third element. Consequently, assuming for purposes of this analysis that there is a genuine issue of material fact as to elements one and two, the dispositive question is whether clearly mandated public policy was violated by terminating plaintiff. The Illinois Supreme Court has explained:

> "There is no precise definition of the term. In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions. Although there is no precise line of demarcation dividing matters that are the subject of public policies from matters purely personal, a survey of cases in other States involving retaliatory discharges shows that a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed."

Id. at 500-01 (quoting Palmateer v. Int'l Harvester Co., 85 Ill. 2d 124, 130 (1981)). Plaintiff maintains that when he reported the violation of the Illinois Prizes and Gifts Act to his employer his actions were protected by clear public policy which encourages the exposure of illegal behavior. The court agrees with plaintiff.

One clearly mandated public policy is that crime should not go unreported and employees acting in good faith should not be deterred from reporting by a fear of a retaliatory discharge. See Mackie v. Vaughan Chapter–Paralyzed Veterans of Am., Inc., 354 Ill. App. 3d 731, 734 (2004) (noting that one-type of recognized theory of retaliatory discharge is the citizen crime-fighter theory where an employee is terminated for whistle-blowing). Section 30 of the Illinois Prizes and Gifts Act provides that "[a] sponsor who represents that a person has been awarded a prize shall, not later than 30 days after making the representation, provide the person

with: (1) the prize; (2) a voucher, certificate, or other document giving the person the prize; or (3) the retail value of the prize. . . ." 815 ILCS 525/30. "Violation of any of the provisions of [the Illinois Prizes and Gifts Act] is an unlawful practice under the Consumer Fraud and Deceptive Business Practices Act . . . and authority granted to the Attorney General or State's Attorney by that Act shall be available to him or her for the enforcement of this Act." 815 ILCS 525/40(c) (emphasis added).

That plaintiff did not report the illegal activity directly to the Illinois Attorney General or State's Attorney is not fatal to his claim of retaliatory discharge. See Michael v. Precision Alliance Group, LLC, 2011 IL App (5th) 100089 ¶24 (2011) ("[I]n no instance has Illinois required an employee to make a direct report to a government agency."). Defendants' argument that there is no express or implied private right of action under the Illinois Prizes and Gifts Act is also misplaced. Plaintiff is alleging the common law tort of retaliatory discharge, not an implied or express statutory private right of action. See Bea v. Bethany Home, Inc., 333 Ill. App. 3d 410, 415 (2002) (recognizing the difference between statutory cause of action for retaliation and common law tort of retaliatory discharge); Harris v. Bethesda Lutheran Homes, Inc., No. 99 C 50062, 2001 WL 877321, at *3 (N.D. Ill. Aug. 3, 2001) (same); Radimecky v. Mercy Health Care & Rehab. Ctr., No. 00 C 2889, 2000 WL 1644510, at *4 (N.D. Ill. Oct. 26, 2000) (same). The court also finds Jandeska v. Prairie International Trucks, Inc., 383 Ill. App. 3d 396 (2008), relied upon by defendants, to be distinguishable. In Jandeska, the plaintiff reported the purported unlawful conduct of his employer to one of the employer's customers, not to the employer or to any law enforcement authority. See id. at 397. Finally, the court disagrees with defendants' contention that plaintiff's answer to defendants' fact 30 of defendants' Local Rule 56.1(a) statement of material facts "shoots his claim in the foot" because plaintiff admits that he reported fraud, and not illegality, to Easton concerning the raffle. The record is clear that plaintiff has indicated that he complained first to the manager of the Belvidere dealership and then to Randall Easton that the failure to award the prize to the winner of the raffle was illegal. Because the court concludes that plaintiff has established the third element of an Illinois common law claim for retaliatory discharge, the court is not able to grant summary judgment for defendants on Count VI on the ground argued.

### III. CONCLUSION

For the foregoing reasons, the motion for summary judgment is granted. U.S. Water Company, LLC and USWC, Inc. are granted summary judgment on Counts I - IV and VI, and are terminated from this case.

1. Easton did not mention any investigation of plaintiff's allegations about the raffle.